This Honorable Appellate Court of the 3rd Judicial District of the State of Illinois is now in session. The Honorable William E. Holbrook, presiding. Please be seated. Thank you. Will the attorney please call the first case? 322-0166 CEAI Elmhurst Terrace, LLC v. Daniel Chesney v. Mark Sanders, Appellate, not arguing. Counsel, you may come up to the podium. For the record, the pro se appellant, Mr. Sanders, I believe we've determined it's not here today. And he informed us he would not be here to participate in the oral argument today. With that being said, Mr. Counsel, your name for the record? Justice Holbrook, my name is Dan Chesney, S-E-C-Z-E-S-N-Y. It's like Kenny Chesney, so try to make it easy on everybody. Country singer. I know. Maybe others might not. May it please the Court? Yes, you may proceed. You have been informed by the clerk you have 15 minutes. Yes, Your Honor. Thank you. I intend to be brief in my remarks today. I think this case is a rather straightforward issue, and it begins and ends with the phrase, I want to leave the premises. Mr. Sanders has filed his appeal arguing that an agreed eviction order should be vacated. There's substantial case law, as CEIA's brief has gone over, that appellate courts traditionally do not review agreed orders, as they're viewed as a settlement between the parties and a contract. And I don't think there's a basis to review here. Before we get into that, I want to just dispel with some of the arguments that Sanders argues in his brief. He argues a multitude of things, and it's a little bit difficult to discern what his core arguments are. As you can see from his authorities, he cites federal housing acts, the Illinois Whistleblower Act, solicitation of murder or criminal statute. It's a little hard to pull out what he's actually arguing, and that's not necessarily our job, but regardless, I'd like to rebut some of those points. First, he argues that he was not properly served and allowed to see the complaint. He argues that the eviction was retaliatory. He argues that he was improperly evicted while his appeal was pending. Mr. Sanders would have the court believe that he was conspired against by the landlord, the free legal aid service he consulted with, the trial court itself, and a myriad of other government agencies and private actors. Mr. Sanders lists a variety of federal statutes and state statutes in the brief without ever incorporating them into his arguments. However, a cursory review of these statutes shows that laundry list of grievances that he's chosen to air in his appellate filings, that he's a victim of stalking, harassment by electronic devices, that there was a murder solicited, again, the Whistleblower Act. However, I believe the record on appeal and plaintiff's brief clearly demonstrate what occurred below. Mr. Sanders failed to pay rent on and off for several years and accrued a balance of tens of thousands of dollars owed to CIA for back rent alone before considering utilities or even attorney's fees. His own statements on the record before the trial court and in his briefing completely undermine his argument here. At the trial court, when the order was entered, the judge, the presiding judge, the trial judge, repeated the terms of the agreement. This is possession, dismissal of the money count, and a seven-day stay. A seven-day stay that Mr. Sanders asked for. Asked for. There's our meeting of the minds. Mr. Sanders said, great. Great. He was given a chance to object, then say that he wasn't agreeing to it. He didn't. He said, great. He agreed to it. The agreed order was entered. Look no further again than his final comments when he filed his motion to vacate in the hearing on April 11th. I want to leave the promises. In Mr. Sanders' own opening brief, his statement of facts includes the statement, the defendant received a notice in his mailbox to appear in court via Zoom for an eviction hearing on February 15th, 2022. As the brief details, he was served by posting. Properly served by posting because they were unable to obtain personal service after weeks of attempts. Diligent attempts and diligent inquiry, which is the standard. Additionally, Mr. Sanders' supplemental appendix includes his attempts to retain prior state legal services for legal counsel the day before the hearing. He was, he had more than actual knowledge of the lawsuit. He was personally served. I'm sorry. He was served by posting, excuse me. On argument, this court should decline to review, much less vacate the agreed order entered by the trial court below. Second, Sanders' brief does not make supported, much less plausible or legally sufficient arguments and violate several rules of the Illinois Supreme Court. Third, and this is really the thrust of Mr. Sanders' complaints with CEIA, that they did not accept his rental assistance. To be clear, CEIA is under no obligation, legal, moral, or otherwise, to accept rental assistance on behalf of Mr. Sanders, yet again, which they had done in the past. And finally, he was properly served. As the court knows from the record on appeal and the briefing, he rented the property in May of 19 for about $914 a month. When he did that, his lease included a provision that he would make all his rental payments timely. There were provisions for late charges, and there was also a provision that he agreed to that if he doesn't pay his rent, it shall constitute a default and forfeiture of the lease. These are all things that Mr. Sanders agreed to when he leased the property. Furthermore, he agreed that notices could be left on the door of his unit per the lease. When Mr. Sanders continued to fall behind in his rental payments, a landlord's five-day notice was served on him in September of 2021. Sanders never paid the rent as required in the five-day notice. CEIA then elected to terminate the lease, as was its right, and file an eviction complaint. After numerous attempts to obtain personal service and alias service, they were unable to do so and obtained leave of the court to obtain service by posting. On February 15, 2022, Sanders appeared before the trial court, discussed the dispute with CEIA over rent, and agreed, as we discussed, to an eviction order with a seven-day stay of possession. On March 11, he filed his appearance, a notice of a motion, and a motion to vacate the agreed order. He set the motion for hearing on April 11. Sanders appeared before the court on April 7, as he had also filed a fee waiver and appeared before the court to prevent the paperwork to substantiate his fee waiver. When he was there, the trial court explicitly reminded him that he's up in four days on the 11th to present and argue his motion to vacate, and also reminded him to bring the proper paperwork for his fee waiver. At the motion hearing on April 11, Sanders repeatedly admitted to owing back rent, wanting to make good on the rent due, wanting to force CEIA to accept the rental payments, and again, most importantly, he confirmed he wanted to leave the premise. The standard of review here, when a trial court reviews an eviction order entered under the Eviction Act, which is formally known as the Forcible Entry and Detainer Act, it's generally an abuse of discretion standard. Usually agreed orders, as we discussed, are not reviewed by courts of review, because they're a settlement. However, if they are reviewed, they're examined as contracts. To summarize the argument, this was clearly an agreed order. He agreed in trial court on the record. It was not coerced. It was not the result of undue influence or unfair bargaining power. His agreement was given freely and voluntarily. The seven-day stay, as I again counsel, but it was. Sanders repeated his assent to the agreement on the record before the trial court several times over the course of the two hearings. I refer you to our supplementary appendix, pages 11 and 17 to 19. I urge this Court not to take up review of the agreed order. However, even if it wanted to, none of the four exceptions are present for this Court to do so. Those exceptions are laid out in the Draper and Kramer, Inc. case. That is that there was a fraudulent misrepresentation made to Sanders. He didn't allege that. He didn't allege it below. He didn't allege it above in his appellate briefs. That he was coerced. He doesn't allege it below. He doesn't allege it above. He says that he was strong-armed, but he goes no further than that accusation during his motion to vacate hearing. He doesn't justify it or explain it, provide any evidence in support of it. He doesn't argue that he lacked capacity. In fact, Mr. Sanders has shown that he has a fair amount of capacity to file an appeal, file his motions, make a lot of the filings that he's made. And finally, he did not and does not allege that there's any gross party disparity. So even if this Court wants to take up the agreed order, none of the exceptions to do so are present in the record on appeal or even Sanders' argument. Counsel, I'm confused. When you say don't take up review, are you saying that you don't have jurisdiction? What do you mean by don't take up review? Respectfully, the Court does not have jurisdiction. And I say that with all due respect, because I respect the Court as a body. But here, asserting jurisdiction over this appeal would be improper. What motion practice did you engage in when the appellant filed the most of the appeal numbers? Motion practice at the appellate court? Yeah. Oh, yeah? Well, I had to file a motion to file in Stanter because we had a technical issue with filing of the brief. But I'm sorry, I don't think I'm— Substantive motion practice. You were saying that the brief was inadequate, didn't meet the rules under the Supreme Court of Sanders? Yes. And those arguments were included in our response brief to his opening brief that Mr. Sanders failed to cite to the record an appeal on his arguments. He failed to incorporate the legal statutes into his argument itself. His argument is vagaries and unsubstantiated cockroach nests. I mean, it's somewhat incoherent in a sense. But you waited until your response brief to do that? Yes, Your Honor. We made those arguments in our response brief. Is there anything preventing you from filing motions to dismiss based on these arguments? I suppose we could have done that, but we chose to address it in our response brief. Perhaps you might not even be here today, then. Hindsight is 20-20, Your Honor. But I'm glad that the court accepted our motion for oral argument and has allowed me to come and present my case. You moved for oral argument. That was the one motion you did do, right? Yes. The thrust of Sanders' brief is that he is upset that CEIA was not required to take his rental assistance, which he had supposedly obtained from some third-party charity. And I think that's really the most important issue before the court in this case. It's undisputed. He was very far behind in making rent payments. Tens of thousands of dollars, in fact. What Mr. Sanders wants is for this court, a court, to impose upon CEIA a duty to accept those charitable funds. However, as this court knows, if a landlord is to accept rent in an instance such as that, they can surrender their right to forfeit and assume possession of the lease. By doing that, by making landlords accept third-party rental assistance any time a tenant falls behind on rental payments, it would result in landlords being unable to evict on the grounds of forfeiture for nonpayment. It would create a vicious cycle where a tenant could fall behind months on payments, go out and find a charitable benefactor to pay the back rent, get them caught up, and then the lessor is obligated to keep them in the property. That's not a good position. It creates unpredictability in the rental market and would be damaging to tenants and landlords, for that matter. I would like to briefly walk the court through the state of law in Illinois. Evictions have been a big point of contention since COVID. There was the eviction moratorium, which was imposed by executive order on March 20, 2020. The rules around the eviction moratorium changed from time to time. There was a point where there was a covered person's tenant form required before a landlord could evict a person. The idea there was to protect people who had issues paying their rent due to COVID. That eventually was rolled back because people were expected. To be clear, all these executive orders explicitly stated that there was no reliance on the executive order that you didn't have to pay your rent. You still had to pay your rent. The requirement was rolled back as the briefing states. The eviction moratorium was lifted. There's no protection in the executive orders that were filed for Sanders. There's no reliance he can make to say that CEIA, at any point then or now, had to accept this rental assistance. Furthermore, I'd like to point the court to the Eviction Act, which was recently passed and went into effect January 1st of this year. There was consideration when the Eviction Act was passed, which its main purpose is to make a source of income a protected status for housing discrimination. There was consideration in the General Assembly whether to make acceptance of or non-acceptance of rental assistance and affirmative defense available to tenants. The General Assembly chose not to do so. By amendment, they completely removed that language. What Sanders is asking for is essentially that language to be imposed upon CEIA. Your Honor, for all the reasons in our brief and argued on appeal here, appellee CEIA, Elmhurst Harris-Ellis, he respectfully asks the court to dismiss Sanders' appeal and affirm the proper century of the agreed eviction order. Thank you, counsel, for your arguments in this matter. This morning, it will be taken under advisement and written disposition shall be entered by the court. We will now briefly recess for a panel chance.